IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY LAMAR WINSTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:15cv433-WHA |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is Anthony Lamar Winston's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody.  Doc. No. 1.[1]  For the reasons that follow, it is the recommendation of the Magistrate Judge that the motion be denied without an evidentiary hearing and this case be dismissed with prejudice.

## I.   INTRODUCTION

On May 15, 2012, Winston pleaded guilty under a plea agreement to possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  Prior to sentencing, Winston wrote the district court a letter complaining that his trial counsel had underestimated his guideline sentencing range.  Doc. No. 8-5.  At a sentencing hearing on August 15, 2012, there was a discussion about Winston's having been given a

---

[1] References to document numbers ("Doc. No.") are to those assigned by the clerk of court in this civil action.  References to the presentence investigation report ("PSI") are to Doc. No. 37 in Winston's underlying criminal case, 3:12cr34-WHA.  All page references are to those assigned by CM/ECF.

sentencing estimate of about 120 months due to the underestimation of his criminal history prior to preparation of the presentence investigation report ("PSI").  Doc. No. 8-6 at 5–7. The PSI's computation of Winston's guideline sentencing range (not counting a downward departure) came to 168 to 210 months for the drug count, which would be followed by a mandatory consecutive term of 60 months on the firearm count.  *Id*.  Consequently, the district court informed Winston that his sentence would be a great deal longer than 120 months and that, in light of the original underestimation of his criminal history, he could withdraw his guilty plea if he so chose.  *Id.* at 3–4 & 10–11.  The court continued sentencing to August 20, allowing Winston time to consider his decision.  *Id.* at 14–15.

At the sentencing hearing on August 20, Winston advised the court that he did not want to withdraw his guilty plea and wished to go forward with sentencing.  Doc. No. 8-7 at 3.  The district court sentenced Winston to 211 months in prison, comprising consecutive terms of 151 months on the drug count[2] and 60 months on the firearm count.

After Winston filed an appeal, his appellate counsel filed an *Anders* brief[3] asserting that he could find no meritorious issues for review.  Doc. No. 8-10.  The Eleventh Circuit allowed Winston to file *pro* se issues.  Doc. No. 8-11.  In his *pro se* brief, Winston raised claims of ineffective assistance of counsel, prosecutorial misconduct, and trial court error. Doc. No. 8-12.  On April 16, 2014, the Eleventh Circuit affirmed Winston's conviction and

---

[2] Winston received a one-level downward departure for substantial assistance under U.S.S.G. § 5K1.1.

[3] *See Anders v. California*, 386 U.S. 738 (1967).

sentence, holding that its examination of the record revealed no arguable issues of merit.

Doc. No. 13.

On June 8, 2015, Winston filed this § 2255 motion arguing that his trial counsel,

Richard K. Keith, rendered ineffective assistance in the following ways:

1.  Because Keith (who had been retained by Winston) charged a low fee, he put forth little effort on Winston's behalf and coerced him into pleading guilty and into not withdrawing his guilty plea.

2.  Keith conducted no independent investigation of Winston's criminal history and advised the district court at the initial sentencing hearing that he did not know of Winston's criminal history.

3.  Keith gave "prevaricated testimony" to the district court regarding his advice to Winston about his potential sentence; failed to ensure that Winston's receipt of a 120-month sentence was incorporated into the plea agreement; and failed to adequately advise Winston of his options should he withdraw his guilty plea.

4.  Keith allowed the Government to withhold evidence about Winston's substantial assistance from a downward departure motion under U.S.S.G. § 5K1.1 and failed to argue for more than the one-level departure he received.

5.  Keith failed to tell the district court about a promise the Government made at a proffer meeting regarding certain property subject to forfeiture.

6.  Keith failed to consult with Winston during the sentencing stage of the proceedings about the possibility of entering a new plea agreement.

7.  Keith failed to use Winston's incarceration records to show Winston was in jail for an entire year during the period a confidential informant told investigators he made multiple drug buys from Winston and also failed to impeach the confidential informant by presenting testimony from a "material corroborating witness" who would have testified he introduced the informant to Winston after the period during which the informant told investigators he was making drug buys from Winston.

8.   Keith failed to tell Winston he would not be granted a third point for acceptance of responsibility under U.S.S.G. § 3E1.1(b).

9.   Keith failed to ensure that the plea agreement included an agreement regarding the drug amount and sentence length.

10.   Keith failed to seek a proffer document before Winston's second proffer meeting with the Government regarding the evidence that could be used against him.

Doc. No. 1 at 4–18 & 21–26.  Winston's § 2255 motion also presented a claim that the Government committed prosecutorial misconduct by improperly advocating to the district court during sentencing and by breaching the plea agreement.  Doc. No. 1 at 19–21.

## II.   DISCUSSION

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited.  A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B.   Claims of Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 689.  Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable.  *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id.* (internal quotation marks and brackets omitted).  "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id.*

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland,* 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to

5

whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* at 372.

Unless a petitioner satisfies the showings required on both prongs of the Strickland inquiry, relief should be denied. *Strickland,* 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id.* at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1.   *Coercion by Counsel*

Winston alleges that because his trial counsel, Richard K. Keith, charged him a low fee, he put forth little effort on Winston's behalf and coerced him into pleading guilty and into not withdrawing his guilty plea. Doc. No. 1 at 4–6.

Winston's allegation that Keith put forth little effort on his behalf is conclusory and unsupported. Further, he fails to demonstrate prejudice. In an affidavit addressing Winston's claim, Keith states Winston retained him for the purpose of working out a plea agreement with the Government. Doc. No. 3 at 1–2. According to Keith:

> I negotiated the best plea agreement the Government would allow for Mr. Winston.
>
> Of course, I encouraged him not to withdraw his guilty plea as the evidence against him was overwhelming and he admitted guilt during his proffer. It was Mr. Winston's decision not to withdraw his guilty plea as he would have been convicted at the trial and would have received a significantly larger sentence.

*Id*. at 1–2.  Winston's own affidavit reflects that he retained Keith intending to have him "work me out a good plea agreement."  Doc. 1-20 at 2.

As for Winston's unsupported assertion of coercion, the transcript of the change of plea hearing contains the following exchange:

> THE COURT: Has anyone attempted in any way to force you to plead guilty or otherwise threatened you to get you to plead guilty?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Has anyone made any promises or assurances of any kind to get you to plead guilty other than the terms that are set out in the Plea Agreement?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Are you pleading guilty of your own free will and because you are in fact guilty?
>
> THE DEFENDANT: Yes sir.

Doc. No. 8-3 at 8.

At the sentencing hearing of August 20, 2012, after the five-day continuance for Winston to consider the matter, Winston stated in open court that he did not want to withdraw his guilty plea and that he wished to go forward with sentencing.  Doc. No. 8-7 at 3.  There is no indication in the transcript of the August 20 hearing that Winston felt pressured into standing by his guilty plea.  Winston points to no instances of coercion by Keith, and the record reflects nothing more than it was Keith's considered advice to his client that pleading guilty under the plea agreement was advantageous, as was standing by the guilty plea, even after it was clear that the sentence imposed would be substantially longer than initially estimated.

The *Strickland* standard for evaluating claims of ineffective assistance of counsel applies to guilty pleas. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A petitioner alleging ineffective assistance in this context must establish that counsel's performance was deficient (i.e., professionally unreasonable) and that counsel's deficient performance "affected the outcome of the plea process." *Hill*, 474 U.S. at 59. To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would ... have pleaded [not] guilty and would ... have insisted on going to trial." *Id*.

In making this allegation of ineffective assistance of counsel, Winston does not state forthrightly that he would have insisted on going to trial but for Keith's alleged deficient performance. Rather, he takes exception to Keith's failure to obtain a better plea agreement on his behalf. But there is no evidence that a better plea agreement was obtainable. Failing to show professionally unreasonable performance by Keith or any resulting prejudice, Winston is entitled to no relief based on this claim of ineffective assistance of counsel.

### 2. *Independent Investigation of Criminal History*

Winston argues that Keith rendered ineffective assistance of counsel by failing to conduct an independent investigation of his criminal history and by advising the district court at the August 15, 2012 sentencing hearing that he did not know about Winston's criminal history. Doc. No. 1 at 6–8.

Winston claims he attempted to give Keith a detailed account of his criminal history before sentencing. Doc. No. 1 at 6–7. Keith disputes this claim. Doc. No. 3 at 2. At the outset of the August 15 sentencing hearing, the initial underestimation Winston's criminal history was discussed. Keith explained to the court:

At the time of Mr. Winston's arrest, of course there was a pretrial services report that included criminal history. However, Mr. Winston, from the state of Georgia—apparently the pretrial services at that point in time were unable to access his criminal history for the state of Georgia, was the explanation.

So we have the indictment. We're dealing, of course, with a plea bargain agreement. As normal, during the course of negotiating with the government, I tend to—and did in this case—meet with the United States Probation Officer Eric Williams. And I met with Mr. Eric Williams, who generated a preliminary guideline estimate report and did so on April 23rd of this year. In that guideline estimate, basically the probation department involves in this case the federal prosecutor, being Verne Speirs; Eric Williams, probation officer; and myself. I have no other evidence of criminal history or knowledge of it other than what I'm being told. Probation had the information they thought was his criminal history. Unbeknownst to Mr. Speirs and myself and Mr. Eric Williams, we thought he was going to be at criminal history category III.

As a result, the sentencing estimate clearly states the estimated sentencing where it would be around—between the gun count and the drug count, it was going to be around 120 months. Mr. Speirs and I thought that was what the estimated sentencing would be, and we had numerous discussions about the 120-month sentence. And the discussion centered around two choices for Mr. Winston. One, he could plead to the drug charge and get a 120-month sentence or he could plead to the drug charge and get a 60-month sentence without the 851 enhancement, and he could get 60 months on the 924(c) gun charge consecutive where it would be 120 months.

So we negotiated a plea agreement. Mr. Winston finally decided to accept the plea agreement for 60—what we thought was 60 months on the gun and 60 months on the drug charge with a 5K and a Rule 35 possibilities for him, and that's what we did. We thought we were going to be around 120 months.

We get the presentence report; and for the first time, we—we are made aware that he is criminal history category VI. And that just, obviously, elevates the sentencing range to where it got us up in this base level of 32. And then when you're talking about category—criminal history category VI, we're up there in that 168- to 200-month approximate sentencing range, notwithstanding the 60 months on the 924(c) gun charge that would be run consecutive.

So I've explained to Mr. Winston we underestimated.  No one made any effort and I made—certainly made no effort to mislead Mr. Winston that he was getting a guaranteed 120-month sentence.  Mr. Winston thought the plea agreement said 120 months.  We've been over the plea agreement on numerous occasions and had several plea agreements.  And Mr. Winston was in court where he was explained by the magistrate judge when he took the plea that it's simply an estimate.  Your lawyers may be wrong.  You could get more, could get less.

Mr. Winston would have you think that I guaranteed and promised him that it was going to be 120 months when I simply explained to him that was our best estimate and, obviously, until we received a presentence report, dealt with objections and any other relevant conduct, that we wouldn't know for sure what the sentencing range would be.

Doc. No. 8-4 at 5–7.

In *United States v. Pease*, 240 F.3d 938 (11th Cir. 2001), the defendant Pease entered a guilty plea to a narcotics trafficking conspiracy.  His attorney estimated a 10-year sentence, but Pease was ultimately sentenced to 30 years as a career offender.  Pease attempted to withdraw his guilty plea, but the district court refused and imposed sentence.  Pease appealed, arguing his counsel was ineffective for not uncovering his prior convictions that led to his 30-year enhanced sentence.  The Eleventh Circuit rejected this argument, noting that it was "clear from the transcript of the plea hearing that the magistrate judge repeatedly informed Pease he could not rely on his counsel's prediction of his sentence" and that "Pease knew at the time he pleaded guilty that his sentence might be life imprisonment, a more severe sentence than he actually received."  *See* 240 F.3d at 941.

In Winston's case, the magistrate judge explicitly advised him during the change of plea hearing that his sentence might differ from any estimate he had been given, then asked

Winston if he understood this.  Doc. No. 8-3 at 12.  Winston replied in the affirmative.  *Id.*

The record reflects the following:

> THE COURT: Now, do you understand that at this moment no one,
> including Judge Albritton, can tell you precisely what the advisory
> sentencing guidelines will require in your case, and that no one will be able
> to do so definitively until after a presentence report is complete and you and
> the United States have had a chance to challenge the reported facts and the
> application of the guidelines.  Therefore, any sentence that is ultimately
> imposed upon you may different than any estimate that your attorney may
> have given you.  Do you understand that?
>
> THE DEFENDANT: Yes, sir.

Doc. No. 8-3 at 12.

In addition, the written plea agreement, the terms of which Winston represented he

understood, contained the following provision:

> The defendant understand that the U.S. Probation Office will prepare a
> presentence investigation report for the Court.  The Probation Officer will
> consider the defendant's conduct related to the offenses to which the plea is
> offered, as well as the defendant's criminal history.  The offense level or
> criminal history category, as calculated by the Probation Officer and
> determined by the court, may differ from that projected by defendant's
> counsel or the U.S. Attorney.  In the event that the Court determines the
> defendant's offense level or criminal history category is higher than the
> defendant anticipated, the defendant will have the right to withdraw the plea
> on that basis.

Doc. No. 8-4 at 10.

It was made clear to Winston before he pleaded guilty that the guidelines estimate

he had been given—120 months—was not binding and was only an estimate based on less-

than-complete information.  Moreover, when the PSI was completed, showing Winston's

criminal history to be substantially greater than was contemplated when the 120-month

estimate was made, the district court afforded Winston the opportunity to withdraw his

guilty plea (an opportunity not afforded the defendant in *Pease*), but Winston chose not to. Under the circumstances, Winston fails to demonstrate that Keith's investigation of his criminal history was professionally unreasonable. More obviously, he also demonstrates no prejudice. Winston was aware when pleading guilty that his offense level and criminal history category could be higher than estimated by Keith. And when this proved to be the case, he stood by his guilty plea. He is entitled to no relief on this claim.

### 3. *Advice about Potential Sentence and Options in Withdrawing Plea*

Winston contends Keith rendered ineffective assistance of counsel by giving "prevaricated testimony" to the district court regarding his advice to Winston about his potential sentence; by failing to ensure that his receipt of a 120-month sentence was incorporated into the plea agreement; and by failing to adequately advise him of his options should he withdraw his guilty plea. Doc. No. 1 at 9–11. Winston maintains that Keith's explanation to the court about the basis for the original underestimation of his criminal history was untrue; that Keith failed to tell him the Government had agreed to recommend a 120-month sentence; and that Keith failed to tell him he had the option of renegotiating a new plea agreement after the extent of his criminal history was discovered. *Id.*

Winston's allegation of "prevaricated testimony" by Keith is discussed in the previous issue in this Recommendation (Part II.B.2). Winston claims he attempted to give Keith a detailed account of his criminal history before sentencing, a claim Keith disputes. *See* Doc. No. 1 at 6–7; Doc. No. 3 at 2. As stated in the discussion above, Winston fails to demonstrate prejudice. The record reflects he was aware when pleading guilty that he

could receive a sentence longer than the 120-month estimate, and he chose not to withdraw his guilty plea after learning he would receive a much longer sentence.

Winston asserts that Keith did not discuss the terms of the plea agreement with him. Doc. No. 1 at 9.  However, at the change of plea hearing, he affirmed in open court that he had discussed the plea agreement with Keith and that he understood its terms.  Doc. No. 8-3 at 4–5.  Such "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  Winston is not entitled to relief based on this claim.

Keith did not perform deficiently in failing to ensure that Winston's receipt of a 120-month sentence was incorporated into the plea agreement.  Contrary to Winston's suggestion, the Government never agreed to recommend a 120-month sentence; that is why the term was not incorporated into the plea agreement.  Winston also suffered no prejudice, because he would never have received a 120-month sentence once the PSI was completed. Under the sentencing guidelines, as reflected in the PSI, Winston had a base offense level of 32 and a criminal history category of VI, which, after a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), yielded a sentencing range of 168 to 210 months for the drug count.[4]  *See* PSI at 4–5 & 9.  It was not ineffective assistance of counsel for Keith to fail to secure a sentence for Winston that it was not possible for Winston to get.

---

[4] As indicated above, Winston also received a one-level §5K1.1 downward departure for substantial assistance.

Winston maintains he did not know about his options if he chose to withdraw his guilty plea and that Keith misled him into believing his only option if he withdrew the plea was to go to trial.  Doc. No. 1 at 10.  However, Winston was not misled.  At the August 15, 2012 sentencing hearing, the district court informed Winston:

> I will tell you at this time that I'm going to give you the opportunity to withdraw your guilty plea.  We'll set the case for trial, and we'll see what happens.  I'm going to give you some time to talk to your lawyer about it and consider this before we go any farther.  But the first thing we're going to do is determine whether or not you want to withdraw your guilty plea.  And if you do, I'll set the case for trial.  If you do not, then we'll proceed with the sentencing.

Doc. No. 8-4 at 3–4.

Winston points to no evidence indicating the Government would have been willing to renegotiate a plea agreement if he had opted to withdraw his guilty plea.  Under the circumstances, he fails to show he did not understand his options should he withdraw his guilty plea, or that Keith misrepresented those options to him.  Winston is entitled to no relief based on this claim of ineffective assistance of counsel.

### 4.  *Section 5K1.1 Downward Departure*

Winston contends that Keith rendered ineffective assistance of counsel by allowing the Government to withhold evidence about his substantial assistance from a downward departure motion under U.S.S.G. § 5K1.1 and by failing to argue more forcefully for a departure bigger than the one-level departure he received.  Doc. No. 1 at 11–12.

Prior to sentencing, the Government moved for downward departure under § 5K1.1 asking the district court to reduce Winston's offense level by one level based on his assistance in ongoing narcotics investigations.  Doc. No. 8-14.  The court granted the one-

level departure at sentencing.  Doc. No. 8-7 at 6.  Winston maintains Keith should have argued for a bigger departure on his behalf because of his assistance in the narcotics investigations.  Doc. No. 1 at 11–12.

Although Keith did not argue at sentencing that Winston was entitled to a bigger departure based on his assistance, he did argue, albeit unsuccessfully, for a four-level downward variance based on Winston's criminal history overstating the seriousness of his past criminal conduct and based also on Winston's having lost out on a bigger § 5K1.1 departure because of his pretrial misconduct.  Doc. No. 8-7 at 12.  In his affidavit addressing this claim, Keith notes that, "while out on pre-trial release, Winston was caught using marijuana and crack cocaine, and actually tipped off DEA targets that he was supposed to be setting up for prosecution."  Doc. No. 3 at 3.

Moving for a § 5K1.1 departure was completely discretionary with the Government and was not included in the plea agreement.  That the Government requested only the one-level § 5K1.1 departure was not a matter within Keith's control.  Particularly where Winston's own misconduct diminished his chances of obtaining a bigger departure, Winston cannot demonstrate that Keith's representation of him was deficient or that he was prejudiced by Keith's failure to advocate strongly enough for a further departure.  Winston is entitled to no relief based on this claim.

### 5.   *Alleged Government Promise at Proffer Meeting*

Winston contends Keith was ineffective for failing to tell the district court about a promise the Government allegedly made at a proffer meeting regarding property subject to forfeiture.  Doc. No. 1 at 12–14.

When Winston was arrested, the Government seized $7,110 in cash and two handguns from the bedroom of the residence he shared with his girlfriend, Jacquana Shealey.  *See* Case No. 3:12cr34-WHA, Doc. No. 37 at 4.  A civil forfeiture action was filed against the seized property.  *See United States of America v. Seven Thousand One Hundred Ten dollars, et al*., 2:11cv831-WKW.  Winston alleges that Government attorneys promised him during a proffer meeting that if he could convince Shealey to relinquish her claim against the seized property in the forfeiture action, the items included in the forfeiture, specifically the money, would not be "used against him."  Doc. No. 1 at 12–13.

Shealey pursued no claim to the property in the forfeiture action.  According to Winston, he was prepared at sentencing to contest the drug amount attributed to him in the PSI, but the Government advised him it would convert the $7,110 seized from his residence into additional drug amounts attributable to him if he did so.  *Id*.  Winston maintains that the Government therefore used the seized money "against him," in violation of its alleged promise not to do so, as leverage to keep him from contesting the drug amount in the PSI. *Id.*  He claims Keith was ineffective for failing to tell the district court about the Government's alleged promise at the proffer meeting.  *Id.*

Addressing this claim, Keith states: "I have no knowledge of the Government promising anything to the Defendant of this nature."  Doc. No. 3 at 3.  Winston, apart from his own unsubstantiated assertions, presents no evidence that the Government made any such promise at a proffer meeting.  Moreover, Winston fails to demonstrate that, had he contested the drug amount listed in the PSI, excluding from consideration any additional amounts based on conversion of the seized money, he would have succeeded and would

16

have received a lesser sentence.  Therefore, he fails to show he was prejudiced by the Government's purported breach of promise.  As such, he cannot demonstrate prejudice resulting from Keith's allegedly deficient performance.  Winston is entitled to no relief based on this allegation of ineffective assistance of counsel.

### 6.   *Failure to Discuss New Plea Agreement*

Winston claims that Keith rendered ineffective assistance of counsel by failing to consult with him during the sentencing stage of the proceedings about the possibility of entering a new plea agreement.  Doc. No. 1 at 14–17.

Winston maintains that between the August 15, 2012 and August 20, 2012 sentencing hearings, when he was deciding whether to withdraw his guilty plea, he was "eager" to discuss a new plea agreement with the Government.  Doc. No. 1 at 14.  He contends, however, that Keith refused to consult with him about the possibility of obtaining a new plea agreement.

Addressing Winston's claim, Keith states:

The Government was not going to re-negotiate the plea agreement and clarified its position to Mr. Winston at the sentencing hearing that he could withdraw the plea agreement and proceed to trial, but the plea agreement would remain the same, should he proceed to sentencing.

There were no other plea bargain options as Mr. Winston alleges, and, there was never any 120-month sentencing recommendation by the Government.  The Court made it clear to Mr. Winston that he could proceed to sentencing, or withdraw his plea and proceed to trial.  I fully explained this situation to Mr. Winston well before the final sentencing date.

Doc. No. 3 at 4.

As noted earlier in this Recommendation (Part II.B.3), the district court informed Winston at the August 15, 2012 sentencing hearing that if he chose to withdraw his guilty plea, the case would proceed to trial. Doc. No. 8-4 at 3–4. Winston can point to no evidence indicating the Government was willing to renegotiate a plea agreement if he opted to withdraw his guilty plea. Consequently, Winston fails to demonstrate he was prejudiced by Keith's alleged failure to consult with about entering a new plea agreement. He is entitled to no relief on this claim of ineffective assistance of counsel.

### 7.   *Failure to Impeach Informant*

Winston contends Keith was ineffective for failing to use his incarceration records to show he was in jail for an entire year during the period a confidential informant told narcotics investigators he made multiple drug buys from Winston. Doc. No. 1 at 17–19. The informant's statements were used in calculating drug amounts attributable to Winston for sentencing purposes. Winston also contends Keith was ineffective for failing to impeach the confidential informant by presenting testimony from a "material corroborating witness," Vinyatta Davidson, who Winston says would have testified he introduced the informant to Winston after the period during which the informant told investigators he was making drug buys from Winston. *Id.* Winston maintains that testimony from Davidson would have cast doubt on the informant's veracity. *Id.*

The PSI reflects that, in February 2011, the confidential informant told narcotics investigators he made multiple buys of crack cocaine from Winston, in quantities of one to two and one-half ounces, during the prior two to three years. *See* PSI at 3, & 5. The PSI calculated Winston's base offense level by attributing to him known drug amounts

involved in crack cocaine sales he made to the confidential informant during controlled buys taking place in March 2011 and also attributing to him amounts for the "historical drugs" he sold the confidential informant during the prior two to three years, conservatively factoring in only two of the one-ounce sales and two of the two-and-a-half ounce sales made to the confidential informant during that period. *See* PSI at 3–4, & 5–9.

Winston's Incarceration Records

Winston contends his incarceration records, as set out in the PSI, reflect that he was in jail under a 12-month sentence for marijuana possession for the entire year after July 15, 2009, when that sentence was imposed. Doc. No. 1 at 17–18. This, he says, undermines the confidential informant's statements to investigators that he made multiple drug purchases from Winston during the two-to-three-year period before February 2011. *See* PSI at 8, & 35.

It is not clear from the PSI that Winston was, as he maintains, incarcerated during the full term of the 12-month sentence imposed in July 2009. The PSI indicates Winston was arrested for a new drug offense in February 2010 (for which he was later sentenced to probation), which suggests he was not incarcerated for the full 12-month period after July 15, 2009. *See* PSI at 9, & 37. Even assuming Winston was incarcerated for the full year from July 2009 to July 2010 (a questionable assumption), this would not demonstrate the falsity of the confidential informant's statements about making multiple drug buys from Winston during the two- to three-year period before February 2011. That period would have run from approximately February 2008 to February 2011 or from approximately February 2009 to February 2011—in either case leaving substantial periods of time during

which Winston was not incarcerated under the sentence imposed in July 2009. Under the circumstances, Winston fails to demonstrate he was prejudiced by Keith's failure to use his incarceration records to impeach the confidential informant's statements about prior drug buys from Winston. This claim entitles Winston to no relief.

## "Material Corroborating Witness" Davidson

Winston maintain Keith should have presented testimony from Vinyatta Davidson, who he says would have testified he introduced the informant to Winston after the period during which the informant told investigators he was making drug buys from Winston. Doc. No. 1 at 18.

> In his affidavit addressing this claim, Keith states:
>
> I am not aware of any "material corroborating witness" (Mr. Davidson) that would have impeached the credibility of a Government informant as [Winston] alleges. Mr. Winston did not inform me that one of his drug dealing associates would come to court and explain that the drug quantity attributed to Mr. Winston was lower than his base drug quantity in the PSR. Mr. Winston additionally admits that "Mr. Davidson" is "afraid" to write an affidavit, but has "concluded" that he would have come to court if subpoenaed. Had there actually been a sentencing witness helpful for Mr. Winston, I would have subpoenaed him to Court.

Doc. No. 3 at 4.

Complaints about uncalled witnesses are disfavored. *Sanders v. United States*, 314 F. App'x 212, 213 (11th Cir. 2008). "This is especially true because allegations of what a witness would have testified are largely speculative. Speculation about what witnesses could have said is not enough to establish the prejudice-prong of *Strickland*." *Jones v. McNeil*, No. 07-22367-CIV, 2009 WL 1758740, at *6 (S.D. Fla. Jun. 22, 2009). "[E]vidence about the testimony of a putative witness must generally be presented in the

form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).

Winston merely asserts that the uncalled witnesses, Davidson, would have testified to the matters he claims.  He does not demonstrate that Davidson, if called, would indeed have testified on his behalf, would have presented testimony of the sort he suggests, and would have been credible enough for the district court to rely on in determining the amount of drugs attributable to Winston for purposes of sentencing. Consequently, Winston has not demonstrated he was prejudiced by Keith's failure to present testimony from Davidson. He is entitled to no relief based on this claim.

### 8.    *Third Point for Acceptance of Responsibility under U.S.S.G. § 3E1.1(b)*

Winston contends Keith rendered ineffective assistance of counsel by failing to tell him he would not be granted a third point for acceptance of responsibility under U.S.S.G. § 3E1.1(b).  *See* Doc. No. 1 at 21–23.

The written plea agreement provided that the Government would not oppose Winston's request for a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), but also stated that the Government would not seek or request a "third point" of reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b).[5]  Doc. No. 8-4 at

---

[5] Under U.S.S.G. §3E1.1(a), a defendant who accepts responsibility is granted a 2-level reduction in his offense level.  Winston was granted this reduction.  Under U.S.S.G. § 3E1.1(b), the Government may move the court for an additional reduction of 1 level, also known as a "third point."

3.  At the change of plea hearing, after the terms of the plea agreement were outlined in open court by counsel for the Government, Winston stated that he understood what the terms of the agreement were.  Doc. No. 8-3 at 5–7.  Winston also affirmed in open court that he had discussed the plea agreement with Keith and that he understood its terms.  *Id*. at 4–5.  The record does not support Winston's claim that he was unaware he would not receive a third point for acceptance of responsibility under § 3E1.1(b).

Further, as Keith points out in his affidavit addressing this claim, Winston damaged his chances of receiving the full three points for acceptance of responsibility when, while on pretrial release, he was caught using marijuana and crack cocaine and tipping off other drug dealers that they were DEA targets.  Doc. No. 3 at 5–6.  While not specifically arguing at sentencing for the third point reduction under § 3E1.1(b), Keith attempted, unsuccessfully, to obtain a four-level downward variance based partly on Winston's missing out on possible sentence reductions because of his misconduct.  Winston fails to demonstrate that Keith's actions regarding the third point reduction under § 3E1.1(b) were professionally unreasonable or that he was prejudiced by Keith's allegedly deficient performance.  This claim of ineffective assistance of counsel entitles him to no relief.

### 9.   *Agreement Regarding Drug Amount and Sentence Length*

Winston contends that Keith rendered ineffective assistance of counsel by failing to ensure that the plea agreement included a provision holding him accountable for only 88 grams of crack cocaine (based on the March 2011 controlled buys) and embodying what he claims was the Government's recommendation that his sentence would be 120 months' imprisonment.  Doc. No. 1 at 23–25.

By this claim, Winston simply attempts to rewrite the terms of the plea agreement to exclude the amounts for the "historical drugs" he sold to the confidential informant during the period before the confidential informant made controlled buys from Winston under DEA supervision and to exclude consideration of his full criminal history uncovered in the compilation of his presentence report.  There was a sound basis for the PSI's inclusion of the "historical drugs" in the drug amounts attributed to Winston and for how those amounts were calculated.  Also, the Government never agreed to recommend a 120-month sentence.  Neither the 88-gram drug amount nor a 120-month sentence recommendation was a part of the plea agreement.  Winston demonstrates neither deficient performance by Keith nor any resulting prejudice.  This claim provides no basis for relief.

### 10.  Proffer Document

Winston contends that Keith rendered ineffective assistance by failing to seek a proffer document before his second proffer meeting with the Government regarding the evidence that could be used against him.  Doc. No. 1 at 25–26.  He maintains that Keith's failure to request a proffer document before the second proffer meeting opened the door for the Government to use his statements against him in "violation of the privilege against self-incrimination."  Id. at 25.

At Winston's first proffer meeting, he, along with Keith and counsel for Government, signed a proffer agreement.  Doc. No. 8-15.  That agreement guaranteed that statements Winston made would not be used against him and that by proffering he would not be deemed to have waived his privilege against self-incrimination.  Id. at 2–3.  It is clear from the face of the agreement that these guarantees extended to any subsequent

interviews, not just the original interview. *Id.*  Consequently, there was no need for Keith to seek another proffer document before Winston's second proffer meeting. Winston's claim that Keith failed to ensure he was protected against self-incrimination is without merit.

Winston's conviction and sentence were based on evidence obtained from sources separate from his proffers and did not result from information he proffered to the Government when Keith was his counsel.  Winston can point to nothing he said in his proffer meetings that was used to obtain his conviction or aggravate his sentence.  He fails to demonstrate ineffective assistance of counsel and is entitled to no relief based on this claim.

## C.   Prosecutorial Misconduct

Winston contends that the Government committed prosecutorial misconduct by improperly advocating to the district court during sentencing and by breaching the plea agreement.  Doc. No. 1 at 19–21.

### Prosecutor's Comments

First, Winston points to statements by counsel for the Government that he claims amounted to "improper advocacy calculated to inflame the Court's perception of the Petitioner." *Id.* at 19.  At the August 20, 2012 sentencing hearing, after Winston asked for leniency, the Government's counsel argued that Winston had ruined his chances of benefiting from a good plea deal by "violating the orders of this Court by failing a drug test and doing other things that were inconsistent with what it takes to get a decent deal from the government." Doc. No. 8-7 at 26.

The prosecutor's argument did not manipulate or misstate the evidence. Winston does not show that the statements were misleading or untruthful. Winston did in fact fail a drug test and engage in other misconduct while on pretrial release, actions that disinclined the Government from advocating for sentence reductions on his behalf.

To establish that a prosecutor's remarks amounted to misconduct, the relevant question is whether the remarks so infected the proceeding with unfairness as to make the results of the proceeding a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Winston fails to demonstrate that the statements by the Government's counsel were so unfair that they constituted a violation of due process.

<u>Breach of Plea Agreement</u>

Winston also claims the Government breached the plea agreement. Doc. No. 1 at 20–21. Here, Winston refers at length to an alleged agreement to a 120-month sentence and to a drug quantity of 88 grams. *Id.* at 19–21. Nowhere in the plea agreement, however, does either of these terms appear. It was made explicitly clear to Winston at the change of plea hearing that his sentence might differ from any estimate he had been given, and the written plea agreement contained the same caveat. There is no evidence that the Government ever agreed to recommend a 120-month sentence or to limit Winston's accountability to the 88 grams of crack cocaine he sold during the March 2011 controlled buys. Once again, Winston is attempting to rewrite the terms of the plea agreement after the fact. (*See* Part II.B.9 of Recommendation, above.) At the August 15, 2012 sentencing hearing, the district court told Winston his sentence would be a great deal longer than 120 months and that he could withdraw his guilty plea if he so chose. The court continued

sentencing to August 20, allowing Winston time to consider his decision.  When Winston appeared in court at the August 20 hearing, he informed the court that he did not want to withdraw his guilty plea.  That decision was made when he had full knowledge of the terms of his plea agreement and an understanding that his sentence would be far longer than 120 months.  As the Government argues, Winston was in no way prejudiced by any broken promise or misunderstanding that led to him ultimately entering a guilty plea.  His claim seeking relief based on an alleged breach of the plea agreement lacks merit.

## III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Winston be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation or before June 29, 2017.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) will bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-

1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

      DONE this 13th day of June, 2017.


                    /s/   Terry F. Moorer
                    TERRY F. MOORER
                    UNITED STATES MAGISTRATE JUDGE