IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

ANTHONY LAMAR WINSTON, )
)
    Petitioner, )
)
v. ) CIVIL ACTION NO. 3:15-CV-433-WHA
) [WO]
UNITED STATES OF AMERICA, )
)
    Respondent. )

## **MEMORANDUM OPINION and ORDER**

This case is before the court on a Recommendation of the Magistrate Judge entered on June 13, 2017 (Doc. #21), and the Plaintiff's Objection thereto (Doc. #31).

The Plaintiff was given until June 29, 2017 to file objections to the Recommendation of the Magistrate Judge. Several motions for additional time in which to file an objection were filed, and granted by the court. The final extension of time for objection was until July 28, 2017. No timely objection was filed on that date, and on August 3, 2017, the court adopted the Recommendation, dismissed the case with prejudice, and entered final judgment. (Doc. #29 and #30).

On August 7, 2017, the Plaintiff filed a an objection (Doc. #31). Although, untimely, the court will consider the objection and the previous Order and Opinion and Final Judgment are due to be vacated.

After *de novo* review of the objection and the file in this case, the court finds the Objection to be without merit.

In his Objection, Winston reasserts his claim that because his trial counsel, Richard K. Keith ("Keith"), "charged him a low fee," counsel put forth little effort on Winston's behalf and coerced him into pleading guilty and into not withdrawing his guilty plea. The Magistrate Judge's Recommendation noted that at the sentencing hearing held on August 20, 2012—after a five-day continuance for Winston to consider the matter—Winston stated in open court that he did not want to withdraw his guilty plea and that he wished to go forward with sentencing. There is no indication in the record that Winston felt pressured into standing by his guilty plea, Winston points to no instances of coercion by Keith, and points to no evidence that a better plea agreement was obtainable. Winston fails to show professionally unreasonable performance by Keith or any resulting prejudice.

Winston also asserts that attorney Keith rendered ineffective assistance by failing to conduct an independent investigation of his criminal history and by advising the district court at the initial sentencing hearing that he did not know about Winston's criminal history. As noted in the Magistrate Judge's Recommendation, the Magistrate Judge explicitly advised Winston during the change of plea hearing that his sentence might differ from any estimate he had been given, then asked Winston if he understood this. Winston replied in the affirmative. It was clarified to Winston before he pleaded guilty that the guidelines estimate he had been given—120 months—was not binding and was only an estimate based on less-than-complete information. Moreover, when the PSI was completed, showing Winston's criminal history to be substantially greater than was contemplated when the 120-month estimate was made, the district court afforded Winston the opportunity to withdraw his guilty plea, but Winston chose not to. Winston fails to demonstrate that Keith's investigation of his criminal history was professionally unreasonable. More obviously, he also demonstrates no prejudice. Winston was aware when pleading guilty that his

offense level and criminal history category could be higher than estimated by Keith. And when this proved to be the case, he stood by his guilty plea.

Winston further objects that Keith rendered ineffective assistance of counsel by giving "prevaricated testimony" to the district court regarding his advice to Winston about his potential sentence; by failing to ensure that his receipt of a 120-month sentence was incorporated into the plea agreement; and by failing to adequately advise him of his options should he withdraw his guilty plea. Winston fails to demonstrate any prejudice regarding these allegations. The record reflects Winston was aware when pleading guilty that he could receive a sentence longer than the 120-month estimate, and he chose not to withdraw his guilty plea after learning he would receive a much longer sentence. Winston asserts that Keith did not discuss the terms of the plea agreement with him. However, at the change of plea hearing, Winston affirmed in open court that he had discussed the plea agreement with Keith and that he understood its terms. Keith did not perform deficiently in failing to ensure Winston's receipt of a 120-month sentence was incorporated into the plea agreement: "Contrary to Winston's suggestion, the Government never agreed to recommend a 120-month sentence; that is why the term was not incorporated into the plea agreement. Winston also suffered no prejudice, because he would never have received a 120-month sentence once the PSI was completed. Under the sentencing guidelines, as reflected in the PSI, Winston had a base offense level of 32 and a criminal history category of VI, which, after a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), yielded a sentencing range of 168 to 210 months for the drug count. It was not ineffective assistance of counsel for Keith to fail to secure a sentence for Winston that it was not possible for Winston to get." Finally Winston maintains he did not know about his options if he chose to withdraw his guilty plea and that Keith misled him into believing his only option if he withdrew the plea was to

go to trial. However, Winston was not misled. The district court informed Winston at the August 15, 2012 sentencing hearing that if he withdrew his guilty plea, the case would proceed to trial. Winston points to no evidence indicating the Government was willing to renegotiate a plea agreement if he withdrew his guilty plea. Winston fails to show he did not understand his options, or that Keith misrepresented those options to him.

Winston objects, reasserting his claim that Keith rendered ineffective assistance by allowing the Government to withhold evidence about his substantial assistance from a downward departure motion under U.S.S.G. § 5K1.1 and by failing to argue more forcefully for a departure bigger than the one-level departure he received. As noted in the Magistrate Judge's Recommendation, although Keith did not argue at sentencing that Winston was entitled to a bigger departure based on his assistance, he did argue, albeit unsuccessfully, for a four-level downward variance based on Winston's criminal history overstating the seriousness of his past criminal conduct and based also on Winston's having lost out on a bigger § 5K1.1 departure because of his pretrial misconduct. In his affidavit addressing this claim, Keith notes that, "while out on pre-trial release, Winston was caught using marijuana and crack cocaine, and actually tipped off DEA targets that he was supposed to be setting up for prosecution." Moving for a § 5K1.1 departure was discretionary with the Government and was not included in the plea agreement. That the Government requested only the one-level § 5K1.1 departure was not a matter within Keith's control. Further, Winston's own misconduct diminished his chances of obtaining a bigger departure. Winston cannot demonstrate that he was prejudiced by Keith's failure to advocate strongly enough for a further departure.

Winston also contends Keith was ineffective for failing to tell the district court about a promise the Government allegedly made at a proffer meeting not to convert into drug amounts seized money subject to forfeiture if Winston convinced his girlfriend, Jacquana Shealey, not to make a claim on the money (over $7,000). The PSI did not convert the seized money into drug amounts. Keith states that, at sentencing, he did not challenge the drug amount actually attributed to Winston in the PSI because he was concerned that such a challenge would lead the Government to convert the seized money into drug amounts, leading to even more drugs being attributed to Winston. As stated by the Magistrate Judge in the Recommendation, Keith maintains he was unaware of any promise by the Government not to convert the money to drug amounts in exchange for Shealey's relinquishing any claim to the money. Apart from his own unsubstantiated assertions, Winston presents no evidence that the Government made any such promise at a proffer meeting. Winston wholly fails to demonstrate that, had he contested the drug amount listed in the PSI (excluding from consideration any additional amounts based on conversion of the seized money), he would have succeeded and would have received a lesser sentence. Therefore, he fails to show he was prejudiced by the Government's purported breach of promise. He cannot demonstrate prejudice resulting from Keith's allegedly deficient performance.

Winston also claims that Keith rendered ineffective assistance by failing to consult with him during the sentencing stage of the proceedings about the possibility of entering a new plea agreement. The district court informed Winston at the August 15, 2012 sentencing hearing that if he chose to withdraw his guilty plea, the case would proceed to trial. Winston can point to no evidence indicating the Government would renegotiate a plea agreement if he opted to withdraw his guilty plea. Consequently, Winston fails to demonstrate he was prejudiced by Keith's alleged failure to consult with him about entering a new plea agreement.

Winston contends Keith rendered ineffective assistance by failing to tell him he would not be granted a third point for acceptance of responsibility under U.S.S.G. § 3E1.1(b). As stated in the Recommendation, the written plea agreement provided that the Government would not oppose Winston's request for a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), but also stated that the Government would not seek or request a "third point" of reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b). At the change of plea hearing, after the terms of the plea agreement were outlined in open court by counsel for the Government, Winston stated that he understood what the terms of the agreement were. Winston also affirmed in open court that he had discussed the plea agreement with Keith and that he understood its terms. The record does not support Winston's claim that he was unaware he would not receive a third point for acceptance of responsibility under § 3E1.1(b). Further, as Keith points out in his affidavit addressing this claim, Winston damaged his chances of receiving the full three points for acceptance of responsibility when, while on pretrial release, he was caught using marijuana and crack cocaine and tipping off other drug dealers that they were DEA targets. While not specifically arguing at sentencing for the third point reduction under § 3E1.1(b), Keith attempted, unsuccessfully, to obtain a four-level downward variance based partly on Winston's missing out on possible sentence reductions because of his misconduct. Winston fails to demonstrate that Keith's actions regarding the third point reduction under § 3E1.1(b) were professionally unreasonable or that he was prejudiced by Keith's allegedly deficient performance.

Finally, Winston reasserts his claim that Keith rendered ineffective assistance by failing to seek a proffer document before his second proffer meeting with the Government regarding the evidence that could be used against him. Winston maintains that Keith's failure to request a proffer document before the second proffer meeting opened the door for the Government to use his

statements against him in "violation of the privilege against self-incrimination." As stated in the Magistrate Judge's Recommendation, at Winston's first proffer meeting, Winston, along with Keith and counsel for Government, signed a proffer agreement. That agreement guaranteed that statements Winston made would not be used against him and that by proffering he would not be deemed to have waived his privilege against self-incrimination. It is clear from the face of the agreement that these guarantees extended to any subsequent interviews, not just the original interview. There was no need for Keith to seek another proffer document before Winston's second proffer meeting. Further, Winston's conviction and sentence were based on evidence obtained from sources separate from his proffers and did not result from information he proffered to the Government when Keith was his counsel. Winston can point to nothing he said in his proffer meetings that was used to obtain his conviction or aggravate his sentence.

and it is ORDERED as follows:

1. The Opinion and Order and Final Judgment (Doc. #29, 30) are VACATED.
2. Plaintiff's Objection (Doc. #31) is OVERRULED.
3. The court adopts the Recommendation of the Magistrate Judge.
4. Wintson's motion to vacate, set aside, or correct sentence under 28 U.S.C. §2255 (Doc. #1) is DENIED.
5. This case is DISMISSED with prejudice.

    Final Judgment will be entered accordingly.

Done this 10th day of August, 2017.

                                          /s/ W. Harold Albritton
                                          W. HAROLD ALBRITTON
                                          SENIOR UNITED STATES DISTRICT JUDGE